**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| THE YORK GROUP, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-2181 |
| | § | |
| HORIZON CASKET GROUP, INC., | § | |
| *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this unfair competition dispute is a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 62] ("Motion to Dismiss") filed by Third-Party Defendant Warfield-Rohr Casket Company ("Warfield") pursuant to Federal Rule of Civil Procedure 12(b)(2). Defendants and Third-Party Plaintiffs Delta Casket Company, Inc., Delta Casket Enterprises, Inc., William Grubbs, and Gerald Kilpatrick (collectively, "Delta Companies")[1] have filed a Response [Doc. # 70],[2] to which Warfield has filed a Reply [Doc. # 78]. Having considered the parties'

---

[1] During the events giving rise to this lawsuit, William Grubbs was the president and owned 100% of the stock in Delta Casket Company. Grubbs also served as the president and was one of several shareholders of Delta Casket Enterprises. Gerald Kilpatrick was also a Delta Casket Enterprises shareholder and served as its vice-president during that time period.

[2] Defendant Horizon Casket Group, Inc. ("Horizon") was included in the Response as a purported third-party plaintiff joining the Delta Companies in opposing Warfield's dismissal. However, Horizon has not filed any third-party claim in this case.

submissions, all matters of record, and the applicable legal authorities, the Court concludes that Warfield's Motion to Dismiss should be **granted**.

## I.     BACKGROUND

Plaintiff The York Group, Inc. ("York") manufactures caskets in the United States. York sells the caskets to distributors who, in turn, sell them to funeral homes throughout the United States. York alleges that this action was made necessary because Defendants (including *inter alia* the Delta Companies) imported Chinese-made caskets into the United States which are "counterfeits" of York's products. The Delta Companies collectively filed a third-party claim against Warfield for contribution, alleging that Warfield purchased many hundreds of caskets from York when York was headquartered in Texas, and that Warfield operated under a distributorship agreement with York that required any litigation arising under the agreement to be maintained in Houston, Texas. Despite the lack of any allegations by the Delta Companies of wrongful conduct by Warfield causing injury to the Delta Companies or any allegations that Warfield's conduct somehow contributed or played a part in the Delta Companies' own exposure to liability, the Delta Companies seek "contribution" from Warfield in the event the Delta Companies are held liable to York.[3]

---

[3]     First Amended Third-Party Claim [Doc. # 79], ¶¶ 4–5.

Warfield is a Maryland corporation. Warfield's current distributorship agreement with York was executed in February 2003. This new agreement designates Allegheny County, Pennsylvania as the proper forum for any disputes relating to the agreement.[4] Since at least February 2003, York has maintained its headquarters in Pennsylvania.[5] Accordingly, Warfield has not operated under a distributorship agreement with York requiring suit in Houston, Texas since at least February 2003 and any purchases made when York was headquartered in Texas ceased at the same time the distributorship agreement expired.[6] There are no other alleged Warfield contacts with Texas. Warfield asserts that it is not licensed to do business in Texas, does not conduct business in Texas, and does not solicit customers from Texas.

## II.  MOTION FOR LEAVE

The Delta Companies did not include allegations in their Original Third-Party Complaint [Doc. # 44] concerning the basis for the Court's personal jurisdiction over Warfield. The Delta Companies therefore move for leave amend their pleadings to include those facts. The Delta Companies included those jurisdictional facts in an

---

[4]  John Rosenberger Affidavit, Exhibit 1 to Warfield's Reply, ¶ 4.

[5]  *Id.*, ¶ 5.

[6]  Warfield further asserts that any caskets it did purchase from York while York was headquartered in Texas were not manufactured in Texas. It is unclear from the record whether the caskets Warfield allegedly purchased from York during this time were ever physically located in Texas.

amended pleading filed June 20, 2006,[7] almost two months before the deadline (August 18, 2006) for amended pleadings set forth in the current docket control order.[8]

Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607–08 (5th Cir. 1998). The Fifth Circuit has concluded that Rule 15(a) "evinces a bias in favor of granting leave to amend." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003) (citations omitted). If the district court lacks a "substantial reason" to deny leave, its discretion is not broad enough to permit denial. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002). This is the Delta Companies' first request to amend their third-party claim against Warfield. They filed the pleading well in advance of the deadline for amended pleadings. Granting leave to amend will not prejudice any of the parties and is necessary for the Court to fully consider the Delta Companies' arguments in opposition to Warfield's Motion to Dismiss. The Delta Companies' motion for leave is therefore granted. The Delta Companies' First Amended Third-Party Claim [Doc. # 79] is deemed filed and the Court will consider the allegations contained therein in its analysis below.

---

[7]   *See* First Amended Third-Party Claim [Doc. # 79], ¶ 4.

[8]   *See* Docket Control Order signed March 14, 2006 [Doc. # 59].

### III. MOTION TO DISMISS

#### A. Legal Standards for Personal Jurisdiction

When a nonresident defendant challenges personal jurisdiction, the party asserting jurisdiction bears the burden of establishing jurisdiction over the defendant. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). Where there has been no evidentiary hearing on a defendant's motion to dismiss, the party asserting jurisdiction need only present facts sufficient to make out a *prima facie* case supporting jurisdiction. *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (citing *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th Cir. 2000)). A *prima facie* showing may be established by the pleadings, depositions, affidavits, or exhibits of record. *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). The court must accept the plaintiff's uncontroverted, non-conclusory factual allegations as true and resolve all conflicting allegations in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2003). The law does not, however, require the court to credit conclusory allegations, even if uncontroverted. *Id.* at 869.

A federal court may exercise personal jurisdiction over a nonresident corporate defendant where (1) the court is permitted to do so under the forum state's long-arm

statute as interpreted by the forum state's courts; and (2) the exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Paz v. Brush Engineered Materials, Inc.,* 445 F.3d 809, 812 (5th Cir. 2006) (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997)); *Alpine View*, 205 F.3d at 214. The Texas long-arm statute "permits the exercise of jurisdiction over a nonresident defendant to the fullest extent allowed by the United States Constitution." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citing *inter alia* TEX. CIV. PRAC. & REM. CODE § 17.042); *see also Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). The jurisdictional inquiry in Texas thus is reduced to a single due-process analysis. *Freudensprung*, 379 F.3d at 343. "The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985). Both the "minimum contacts"

prong and the "fundamental fairness" prong must be satisfied in order for this Court to exercise personal jurisdiction over a defendant. *See Burger King*, 471 U.S. at 476–77.

The minimum contacts prong may be established under a theory of either "general" or "specific" personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984); *Freudensprung*, 379 F.3d at 343. "A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants [*sic*] contacts with the forum state." *Freudensprung*, 379 F.3d at 343 (citing *Helicopteros Nacionales*, 466 U.S. 408). When a court exercises personal jurisdiction over a defendant in a case not arising out of or related to the defendant's contacts with the forum state, the court is exercising general jurisdiction over the defendant. *Helicopteros Nacionales*, 466 U.S. at 414 n. 9. "It is well established that 'merely contracting with a resident of a forum state is insufficient to subject the nonresident to the forum's jurisdiction.'" *Freudensprung*, 379 F.3d at 344 (quoting in part *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (additional citations omitted)). Further, the Fifth Circuit "has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the

nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Id.* (citing *Holt*, 801 F.2d at 778; *Stuart v. Spademan*, 772 F.2d 1185, 1192–94 (5th Cir. 1985)).

When there is no specific jurisdiction because the cause of action does not arise from or relate to the foreign corporation's purposeful conduct within the forum state, due process requires that there be "continuous and systematic contacts" between the State and the foreign corporation to support an exercise of general personal jurisdiction by that forum. *Helicopteros Nacionales*, 466 U.S. at 414–15; *Freudensprung*, 379 F.3d at 343 (citing *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). General jurisdiction's "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001) (citing 16 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 108.41[3] (3d ed.1999)); *see also Cent. Freight Lines*, 322 F.3d at 381 (no general jurisdiction in Texas even though defendant "routinely arranges and receives interline shipments to and from Texas and apparently sends sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts").

Once the plaintiff has established a *prima facie* showing of the minimum contacts prong, the burden shifts to the defendant to establish the second prong of the due process analysis: "that the exercise of jurisdiction would not comply with 'fair play' and 'substantial justice.'" *Freudensprung*, 379 F.3d at 343 (citing *STORMAN ASIA M/V*, 310 F.3d at 378). In assessing the fundamental fairness prong, courts typically consider a number of factors, including: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *See Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

**B.    Analysis**

Warfield contends dismissal under Rule 12(b)(2) is warranted because the Delta Companies cannot satisfy their *prima facie* burden to show that Warfield is subject to this Court's *in personam* jurisdiction. Warfield contends that this Court lacks specific jurisdiction over it because the Delta Companies' claims against Warfield do not "relate to" or "arise out of" its contacts with Texas. Warfield further maintains that general jurisdiction is improper because the Delta Companies have not provided

evidence of the "continuous and systematic" contacts required to support general jurisdiction. In response, the Delta Companies maintain these contacts are sufficient to establish personal jurisdiction over Warfield in Texas. For the reasons discussed below, the Court finds that it lacks personal jurisdiction over Warfield.

### 1. Specific Jurisdiction

The Court must first determine whether Warfield had sufficient minimum contacts with Texas under a theory of "specific" personal jurisdiction. There is no specific jurisdiction unless Warfield purposefully directed its activities toward Texas, *see Panda Brandywine*, 253 F.3d at 869, and the claims against Warfield "relate to" or "arise out of" those activities. *See Freudensprung*, 379 F.3d at 343. The Delta Companies' claims against Warfield have no connection with Warfield's pre-February 2003 distributorship agreement with York. Moreover, the Delta Companies are strangers to that contract.

Warfield's alleged casket purchases from York while York was based in Texas also do not subject Warfield to specific personal jurisdiction in Texas. There is no indication that the Delta Companies' claims against Warfield in this lawsuit concern those purchases. Rather, the Delta Companies' claims against Warfield (given the most generous construction) involve Warfield's alleged importation of imitation York caskets from China. No factual allegations in the Third-Party Complaint state that

these activities were related to Texas in any way. The record does not suggest the Delta Companies' claims against Warfield otherwise "relate to" or "arise out of" Warfield's contacts with York in Texas. The Delta Companies therefore have failed to make a *prima facie* showing sufficient to support this Court's exercise of specific jurisdiction over Warfield. *See Freudensprung*, 379 F.3d at 343.

### 2.     General Jurisdiction

Because the Court lacks specific personal jurisdiction over Warfield in this case, the Court must assess whether substantial, systematic, and continuous contacts between Warfield and Texas exist to confer general jurisdiction. *See Wilson*, 20 F.3d at 649. The Delta Companies contend that this Court may exercise general jurisdiction over Warfield because Warfield purchased many hundreds of caskets from York when York was headquartered in Texas, and Warfield operated under a distributorship agreement with York requiring that any suit be maintained in Houston, Texas. The Court disagrees.

First, in determining whether a nonresident defendant maintained systematic contacts with the forum state, the contacts must be "substantial." *Wilson*, 20 F.3d at 649. Here, Warfield's alleged contacts with Texas are simply insufficient as a matter of law to confer general personal jurisdiction. It is well-settled that mere purchases from the forum state, even if occurring at regular intervals, are not enough to support

a finding of general personal jurisdiction over a nonresident defendant. *See Helicopteros Nacionales*, 466 U.S. at 418–19 (holding there was no general jurisdiction over nonresident defendant that negotiated a contract in forum state, purchased helicopters from the forum state, and sent its employees for training in forum state, because such activity did not satisfy the continuous and systematic requirement); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (holding that nonresident defendant lacked the continuous and systematic contacts required to support general jurisdiction where defendant entered into charter agreements with local subsidiaries, engaged in advertising designed to reach the forum state, and purchased boats at marshals' sales within the forum state); *Internist Bank Clifton v. Fernandez*, 844 F.2d 279, 283 n.1 (5th Cir. 1988) (noting that general jurisdiction was not supported where defendant's activities in the forum—when relating only to the purchase of an airplane—were not sufficiently continuous or systematic). Warfield's purchase of hundreds of caskets from York over an unspecified period during the pre-February 2003 distributorship agreement is not sufficient to support a *prima facie* showing of substantial systematic contacts with Texas. *See Helicopteros Nacionales*, 466 U.S. at 418; *Dalton*, 897 F.2d at 1362 n.3; *Internist Bank Clifton*, 844 F.2d at 283 n.1. The deficiency here is compounded by the fact that there is no allegation that the caskets Warfield purchased from York ever were physically in the State of Texas.

The Delta Companies also rely on the Fifth Circuit's opinion in *Gundle* for the proposition that the Court may subject Warfield to personal jurisdiction because Warfield entered into a distributorship agreement with York that contained a Houston, Texas, choice of venue provision. *Gundle* involved a Texas subcontractor who sued a Maryland surety in Texas on a construction bond relating to a Pennsylvania construction project, alleging the Pennsylvania general contractor refused to pay certain fees charged by the subcontractor relating to the project. 85 F.3d at 204. The surety then filed a third-party indemnity claim against the general contractor who had agreed in a surety agreement to indemnify the surety for amounts the surety paid on the construction bond. *Id.* The general contractor moved to dismiss the third-party claim for lack of personal jurisdiction. *Id.* at 204. The Fifth Circuit concluded the general contractor had sufficient minimum contacts with Texas to support the exercise of jurisdiction because the general contractor had (1) expressly acknowledged in a bond agreement that it was subject to suit in any state where labor was performed or materials furnished and it subsequently entered into a contract knowing that the Texas subcontractor would perform services and render labor in Texas; (2) mailed payments

to the subcontractor at its Texas address; and (3) engaged in communications with a Texas resident pertaining to the contract. *Id.* at 205–07.[9]

The Delta Companies' reliance on *Gundle* is misplaced. While the Fifth Circuit upheld a finding of personal jurisdiction over the nonresident general contractor, the court rested its decision on *specific jurisdiction.* 85 F.3d at 205–06. ("It is indisputable that if there is personal jurisdiction over the defendants in the instant case it exists by virtue of 'specific' personal jurisdiction. Consequently, our review is limited to this subdivision of the minimum contacts analysis."). Specific personal jurisdiction existed because the claim related to the bond agreement that contained the provision akin to a choice-of-forum provision. *Id.* at 206–07. *Gundle* is inapposite to the present general jurisdiction analysis. *See id.*

None of the typical indicia of general jurisdiction are present here. There is no evidence that Warfield was registered to do business in Texas, that it had any employees or offices in the state, that it owned any property or facilities in Texas, or that it had any contact with Texas after the expiration of its prior distributorship agreement with York in February 2003. The Delta Companies' allegations fail to

---

[9]  It is also noted that the fact that Warfield acceded to York's requirement that suit between Warfield and York be brought in Houston prior to February 2003 is not sufficient to establish general jurisdiction. This contractual provision at best would be relevant to a specific jurisdiction analysis between Warfield and York, not the Delta Companies.

establish that Warfield has purposefully availed itself of the benefits and protections of Texas laws by maintaining substantial, systematic, and continuous contacts in Texas such that Warfield should have anticipated being haled into court in this state. *See Electrosource*, 176 F.3d at 871–72. The Court therefore cannot assert general personal jurisdiction over Warfield.

## IV. <u>CONCLUSION AND ORDER</u>

The Court concludes that it lacks specific or general personal jurisdiction over Warfield. Warfield's Motion to Dismiss is meritorious. It is hereby

**ORDERED** that Third-Party Defendant Warfield-Rohr Casket Company, Inc.'s Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction [Doc. # 62] is **GRANTED**. It is further

**ORDERED** that the claims of Third-Party Plaintiffs Delta Casket Company, Inc., Delta Casket Enterprises, Inc., William Grubbs, and Gerald Kilpatrick against Third-Party Defendant Warfield-Rohr Casket Company, Inc. [Doc. # 79] are **DISMISSED** for lack of personal jurisdiction, without prejudice to Delta Companies' re-filing such claims in an appropriate forum.

**SIGNED** at Houston, Texas, this **28th** day of **July, 2006**.

*[signature]*

Nancy F. Atlas
United States District Judge