# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

THE YORK GROUP, INC.,                          §
     Plaintiff,                               §
                                              §
v.                                             §          CIVIL ACTION NO. H-05-2181
                                              §
HORIZON CASKET GROUP, INC.,                    §
*et al.*,                                      §
     Defendants.                              §

## MEMORANDUM AND ORDER

This is a civil commercial lawsuit brought by Plaintiff The York Group, Inc. ("York")

against Defendants Delta Casket Company, Inc. ("Delta Casket"), Delta Casket Enterprises,

Inc. ("Delta Enterprises"), Horizon Casket Group, Inc. ("Horizon"), William Grubbs, Jr., and

Gerald Kilpatrick (collectively, "Defendants").[1]   York has filed a Motion for Partial

Summary Judgment ("Motion") [Doc. # 88] seeking summary judgment of liability on its

breach of contract and Lanham Act claims.[2]   The Delta Defendants have filed a Response

---

[1]    During the events giving rise to this lawsuit, William Grubbs ("Grubbs") was the president
of and owned 100% of the stock in Delta Casket.  Grubbs also served as the president and
was one of several shareholders of Delta Enterprises.  Gerald Kilpatrick ("Kilpatrick") was
also a Delta Casket Enterprises shareholder and served as its vice-president during that time
period.

[2]    More specifically, York moves for partial summary judgment on its breach of contract claim
against Delta Casket and Delta Enterprises.  York moves for partial summary judgment on
its Lanham Act claim against Delta Casket, Delta Enterprises, Horizon, Grubbs, and
Kilpatrick.

[Doc. # 94], and York has filed a Reply [Doc. # 95].[3]  Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that York's Motion for Partial Summary Judgment should be **denied**.

## I.    FACTUAL BACKGROUND

The undisputed evidence in the summary judgment record establishes the following facts.  York manufactures caskets which are purchased by distributors who, in turn, sell them to funeral homes throughout the United States.  Delta Casket and Delta Enterprises (collectively, "Delta") began selling York caskets in the 1980s.  In 1999, Delta and York entered a written distributorship agreement ("Agreement") that governed Delta's use of York's "trademarks, trade names, service marks, copyrights, patents, brand names, labels, symbols or other proprietary rights."  Agreement, § 4.1, at 7.  Under the Agreement, Delta acted as an authorized York distributor and sold primarily York products.  Delta terminated the Agreement at the end of 2001, but York caskets continued to make up the bulk of Delta's sales.  Under the terms of the agreement, upon termination, Delta agreed that it would "not thereafter use any trademark, trade name, servicemark, brand name, label or symbol which gives or may give the impression that the relationship between the parties . . . still exists, or do any other act tending to impair or damage the Marks."  Agreement, § 4.2, at 7.

In 2002, Delta decided to import caskets from China for sale in the United States. Gerald Kilpatrick, Delta Casket's Vice President and one of its shareholders, admitted that

---

[3]    Also before the Court is a Motion for Leave to File a Surreply [Doc. # 96] submitted by all Defendants, along with a copy of the proposed pleading [Doc. # 100].  That motion is **granted**.

Delta sent whole caskets and pieces of caskets to a Chinese manufacturer called Wuxi Tractor Company.  York has submitted an undated copy of a freight bill allegedly showing one of these shipments, and argues that Delta's intent was to give the Chinese manufacturers casket samples to copy.  At an October 2003 meeting, Delta analyzed the potential costs and benefits of introducing these caskets into the domestic market.[4]  In attendance at that meeting were the distributing companies that shortly thereafter incorporated as the Horizon Group. The imported Chinese caskets bore Horizon labels, but were not individually labeled "Made in China."  By 2004, Delta was selling Chinese-manufactured caskets, produced by the Shanghai Tops Furniture Co. and Wuxi, in domestic markets where York caskets were also sold.

It is undisputed that there were similarities between York caskets, which Delta was still purchasing and reselling, and the imported Chinese caskets.  York claims that the Delta entities breached the Agreement by using York's Marks to produce and market those imports, and that all Defendants violated the Lanham Act, 15 U.S.C. § 1125 *et seq.* by *inter alia* not

---

[4]    A memorandum produced in anticipation of that meeting indicates that Delta was considering "crippling York" as a possible consequence of marketing the Chinese caskets.  Defendants object to this document as inadmissible hearsay.  This objection is overruled.  The memorandum is not taken for the truth of assertion that importing Chinese caskets might cripple York.  Rather, it is used as evidence of Delta's intent to copy York's casket designs. *See United States v. Arthur Andersen, LLP*, 374 F.3d 281, 292 (5th Cir. 2004) (statements admitted "admitted only to show that they were made" not hearsay), *rev'd on other grounds*, 125 S. Ct. 2129 (U.S. 2005); *United States v. Ballis*, 28 F.3d 1399, 1405 (5th Cir. 1994) (challenged admissions not hearsay "because they were not offered for the truth of the statements").

properly labeling them as "Made in China."  York seeks summary judgment on both these claims.

## II.   **SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's

case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).  However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response.  *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence).  Likewise, "unsubstantiated or conclusory assertions

that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

## III.   **BREACH OF CONTRACT**

All parties rely on Texas law for their arguments.[5] Texas law requires proof of four elements for a breach of contract claim: "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Frost Nat'l Bank v. Burgs*, 29 S.W.3d 580, 593 (Tex.App.—Houston [14th Dist.] 2000, no pet.) *(quoted by Bring on v.*

---

[5]      The Agreement provides that Texas law governs its interpretation and all questions pertaining to it. Agreement, § 8.13, at 14.

*Array Systems Corp.*, 325 F.3d 572, 577 (5th Cir. 2003)).  York bears the initial burden of showing that there is no genuine material issue of fact as to each of these elements.  *Lincoln Gen. Ins. Co.*, 401 F.3d at 349.  Defendants dispute all but the second element, York's performance of the Agreement.

Turning to the first element, the contractual validity of the Agreement, York contends that Delta violated three specific provisions:

> Section 4.1   Ownership of Marks. . . . Distributor acknowledges York's exclusive ownership of York's trademark's, trade names, Servicemark, copyrights, patents, brand names, labels, symbols or other proprietary rights (collectively, the "Marks") . . . Distributor shall use the Marks in such a manner so as to best preserve York's interests in the Marks, and Distributor shall not acquire any right or interest, legal, equitable or otherwise, in the Marks by any such use or by any means other than by specific written assignment of such rights or interests by York.

> Section 4.2   Use of Marks.  Distributor shall not sell any caskets under any Mark of York which are not Products of York. . . . Distributor shall not, at any time during or after the Term, register or use any mark that is similar to a Mark by itself or in combination with any other words, symbols or designs without the express written authorization of York.

> *          *          *          *

> Section 6.6   Obligations Upon Termination.   Upon termination of this Agreement for any reason:

> (a)       Distributor shall within 10 days remove all references to York and the Marks from Distributor's place or name of business, listings, letterheads, catalogs, advertising and other literature, and shall not thereafter use any trademarks, trade name, servicemark, brand name, label or symbol which gives or may give the impression that the relationship between the parties under this Agreement still exists, or do any act tending to impair or damage the Marks;

> *          *          *          *

(e)     Distributor agrees and acknowledges that any goodwill associated with York and the Products is the exclusive property of York.  Distributor agrees that it will not act in any manner detrimental to the sale and distribution of the Products or to the reputation or goodwill of York or the Products.

Delta responds that only Section 4.1 was explicitly included in the contract's survival clause, Section 8.17, which states: "The provisions of Section[ ] . . . 4.1 . . . shall survive the termination of this agreement."  Delta deduces that the obligations in Sections 4.2 and 6.6 did not survive termination of the Agreement.  This argument is rejected.  Section 8.17 is not exclusive and does not nullify the specific language in Section 4.2, which bound Delta not to "*at any time during or after the Term*, register or use any mark that is similar to a Mark . . . without the express written authorization of York." (Emphasis added.)

Delta's argument also is belied by the express terms of Section 6.6.  The obligation created by that provision cannot expire with the termination of the Agreement; the obligation does not arise until the Agreement terminates:  "*Upon termination of this Agreement* for any reason . . . Distributor agrees that it will not act in any manner detrimental to the sale and distribution of Products."  (Emphasis added.)  The operative language of Sections 4.1, 4.2, and 6.6, therefore, requires Delta's compliance with those provisions upon termination of the Agreement.

Delta also argues as to the first element of York's breach of contract claim that the Agreement is not a valid contract under Texas law because the Agreement is an unenforceable covenant not to compete.  Delta's characterization of the Agreement as a "non-compete" contract is based on Section 6.6's stipulation that Delta may not act "in any

manner detrimental to the sale and distribution of the Products or to the reputation or goodwill of York or the Products."  Merely selling another manufacturer's caskets, Delta contends, could be construed as "detrimental to the sale and distribution" of York's products. In an attempt to fit within the ambit of the law on non-compete agreements, Delta asserts that it could be held liable under Section 6.6 for selling the products of third-party manufacturers that use model names similar or identical to York's (such as the "Neopolitan" model).  This characterization of Section 6.6 unpersuasive.  Significantly, York has not attempted in this case to interpret or enforce the Agreement so broadly.  The wording of Section 6.6 expressly addresses York's "goodwill" and does not stretch to diminution of market share or sale of third-party goods.  Black's Law Dictionary defines a covenant not to compete as "[a]n agreement, generally part of a contract of employment or a contract to sell a business, in which the covenantor agrees for a specific period of time and within a particular area to refrain from competition with the covenantee. Such covenant restrictions must be reasonable in scope and duration or backed by adequate consideration."  BLACK'S LAW DICTIONARY 364 (6th ed.1990).  Section 15.50 of the Texas Business and Commerce Code requires that the covenant not to compete be "ancillary to or part of an otherwise enforceable agreement," and such covenants are only unenforceable if there are limitations that are not reasonable as to duration, geographic area, and substantive scope of the limitation.  *See, e.g.,* TEX. BUS. COM. CODE § 15.50(a); *see generally Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644 (Tex. 1994); *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 298

(Tex.App.—Beaumont 2004).  A contract is only subject to section 15.50 if it is a covenant not to compete.

Delta identifies no legal authority supporting its contention that a contract clause containing the language in Section 6.6 or a clause of that general nature is a "non-compete agreement" under Texas law.  Delta thus fails to identify a genuine issue of material fact concerning invalidity of the Agreement as a covenant not to compete.  Accordingly, Delta has not shown there is a genuine and material fact issue on the existence of a valid contract, the first element of York's breach of contract claim.

The second required element for York's contract claim is that the contract actually was breached.  York's specific contention, as set out in its First Amended Complaint ("Complaint"), is that the Delta Defendants "have intentionally and willfully been selling low quality Chinese-made counterfeit caskets using the York Marks and using York's copyrighted materials without York's permission or authorization."  Complaint [Doc. # 5] at 11, ¶ 36.  York points to Kilpatrick's deposition, in which he acknowledged that Delta marketed its imported caskets under product names and numbers that were similar to York's.[6] There is no dispute that there are physical similarities between York's products and Delta's Chinese-made copies.  A Horizon group inspection checklist instructs each inspector to "verify casket VS. York litho (each inspector have a litho book) [*sic*]."  Kilpatrick admitted that when the Shanghai Tops company sent him documents showing the anticipated design

---

[6]     York inquired specifically, for example, about an imported coffin Delta marketed as the "Winthrop Storm Blue;" Kilpatrick agreed that the name was similar to York's "Winthrop Blue" casket.

and physical features, such as the finish, of their casket styles, they used photographs of corresponding York models as examples of the finished product.  Although Defendants contest the adequacy of York's summary judgment evidence on this issue, they point to no contradictory evidence.  Nor has Delta identified any specific evidence in the summary judgment record that creates a genuine issue of material fact as to whether it sold imported caskets under York's Marks without York's approval.[7]  Delta has accordingly not met its burden of showing a genuine issue of material fact on this element.  *See Littlefield*, 268 F.3d at 282.

The final element of a breach of contract claim requires proof that the plaintiff suffered some damage resulting from the defendant's conduct.  On this element, it is York that has not met its summary judgment burden.  York implicitly acknowledges it has produced no evidence on this subject; it contends instead that because its motion is limited to liability on the contract and Lanham Act claims, it need not show damages.  This misconstrues the applicable law.  York is correct that it does not need to make any argument as to the *amount* of damages, but it must show that it *was* damaged.  As noted above, one of the four necessary elements of a breach of contract claim under Texas law is a showing that the defendant's breach of the agreement damaged the plaintiff.  *See, e.g., Frost Nat'l Bank*, 29 S.W.3d at 593; *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 615 (Tex.App.—Texarkana 2002, pet. denied); *Scott v. Sebree*, 986 S.W.2d 364, 372-73

---

[7]     The Court has no obligation to scour the record without direction by the parties to see if there is evidence to create a genuine fact issue.  *See Malacara*, 353 F.3d at 405.

(Tex.App.—Austin 1998, pet. denied).   In its summary judgment motion, York merely alleges that the Defendants' activity was "particularly damaging to York in that most of the Chinese caskets were duplicates of York caskets—i.e., they were marketed using similar names, designs and colors."   This is a mere unsupported allegation of damage. "Unsubstantiated assertions are not competent summary judgment evidence." *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002).   By neglecting an element of its claim on which bears the burden of proof at trial, York has failed to meet its summary judgment burden to identify "those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co.*, 401 F.3d at 349 (citing *Celotex*, 477 U.S. at 322-25).   The Court therefore declines—on the present record—to grant summary judgment on the breach of contract claim.

## IV.   LANHAM ACT CLAIM

York contends Defendants committed a *per se* Lanham Act violation by failing to designate the Horizon caskets' country of origin because the Tariff Act of 1930, 19 U.S.C. § 1304 ("Tariff Act"), requires foreign products be permanently marked with their country

of origin.[8]  York moves for  summary judgment on liability on its § 43(a) claim. Delta

contests the legal viability of this theory.

A.     **Legal Standard**

The Lanham Act's purpose is to "make 'actionable the deceptive and misleading use

of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'"

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15

U.S.C. § 1127).  Section 43(a) of the Lanham Act, as amended at 15 U.S.C. § 1125(a),

creates a broad federal remedy that goes beyond mere trademark protection. But it is not

intended to have "boundless application as a remedy for unfair trade practices."  *Id.* at 28–29

(quoting *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974))

(internal quotations omitted).  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1),

provides in pertinent part:

> Any person who, on or in connection with any goods . . . uses in commerce
> . . . any false designation of origin . . . which—(A) is likely to cause confusion
> . . .as to the origin . . . of his or her goods, or (B) in commercial advertising or
> promotion, misrepresents the . . . geographic origin of his or her or another
> person's goods . . . shall be liable in a civil action to any person who believes
> that he or she is likely to be damages by such act.

---

8       The pertinent language of the Tariff Act reads: "Except as hereinafter provided, every article
of foreign origin . . . imported into the United States shall be marked in a conspicuous place
as legibly, indelibly, and permanently as the nature of the article (or container) will permit in
such manner as to indicate to an ultimate purchaser in the United States the English name of
the country of origin of the article."  19 U.S.C. § 1304(a).

The Court assumes without deciding that a false representation concerning the
geographic origin of goods can be a violation of § 43(a)(1) of the Lanham Act, 15
U.S.C. § 1125(a)(1).  *See generally Scotch Whisky Ass'n v. Majestic Distilling Co.,
Inc.*, 958 F.2d 594, 598 (4th Cir. 1992); *Societe Des Produits Nestle, S.A. v. Casa
Helvetia, Inc.*, 982 F.2d 633, 639 (1st Cir. 1992).

Subsection (a)(1)(A) creates, *inter alia*, a "false designation of origin" cause of action, while subsection (a)(1)(B) represents a "false advertising" cause of action.  *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 565 (5th Cir. 2005); *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991).  The focus of the pending motion is York's theory that Defendants' sale in the United States of imported Chinese made Horizon Caskets a constitutes a false geographic "designations of origin" in violation of the Lanham Act.[9]

The Fifth Circuit requires proof of five elements on false advertising and false designation of origin claims under 15 U.S.C. § 1125(a)(1):

(1)     the defendant made a false statement of fact about its product in a commercial advertisement;

(2)     the statement actually deceived or had a tendency to deceive a substantial segment of its audience;

(3)     the deception was material, in that it is likely to influence the purchasing decision;

(4)     the defendant caused the false statement to enter interstate commerce; and

(5)     the plaintiff has been or is likely to be injured as a result.

---

[9]     *See* York's Complaint, at  10, ¶ 32.  York does not separately plead a false advertising claim, and the parties do not make any distinction between such a claim and a false designation of origin.  Any such distinction is immaterial here because the elements for both Lanham Act claims are the same in the Fifth Circuit.  *See also Two Pesos, Inc.*, 505 U.S. at 780 (1992) (Stevens, J., concurring) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?" (internal citations and quotations omitted)).

*IQ Products Company v. Pennzoil Products Company*, 305 F.3d 368, 375 (5th Cir. 2002) (applying § 1125(a)(1)(B)); *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001) (construing § 1125(a)(1)(A)); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (construing § 1125(a)(1)(B)); *King v. Ames*, 179 F.3d 370, 373–74 (5th Cir. 1999) (construing § 1125(a)(1)(A)).

To succeed on an unfair competition claim for false designation of origin under the Lanham Act, a plaintiff must prove that the false designation of origin is likely to cause confusion among consumers.[10] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992); *Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners Inc.*, 41 F.3d 223, 224 (5th Cir. 1995); *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985). "Misleading" statements, as contrasted with "false" statements, are actionable only if consumers are actually deceived. "Representations are not shielded from condemnation under [the Lanham Act] simply because they are literally true. The Act's proscriptions against false representation reaches 'innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlining an advertisement . . . as well as blatant falsehoods.'" *Better Business Bureau v. Medical Doctors, Inc.*, 681 F.2d 397, 400 (5th Cir. 1982) (quoting *Vidal Sassoon,*

---

[10]     The Fifth Circuit utilizes a seven-factor test in determining "likelihood to cause confusion" in a trademark dispute: (1) the type of trademark at issue; (2) similarity of design; (3) similarity of product; (4) identity of retail outlets and purchasers; (5) identity of advertising media utilized; (6) defendant's intent; and (7) actual confusion. *Soc'y of Fin. Examiners*, 41 F.3d at 228 n.10. These relate to confusion between competing products, not confusion as to country of origin. There does not appear to be a specific test for what constitutes "likelihood of confusion" in relation to false designation of country of origin.

*Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981)); *accord William H. Morris Co. v. Group W., Inc.*, 66 F.3d 255, 257-58 (9th Cir. 1995).   A plaintiff seeking monetary damages for statements that are "literally false . . . need not introduce evidence on the impact the statements had on consumers." *Pizza Hut, Inc.*, 227 F.3d at 497.   But if the challenged statements were misleading but not literally false, the plaintiff must prove actual deception with "evidence of actual consumer reaction to the challenged advertising or surveys showing that a substantial number of consumers were actually misled by the advertisements." *Id*.

### B.   <u>Analysis</u>

York argues in its Motion for Summary Judgment that Delta violated the Tariff Act of 1930 by not labeling their imported caskets as made in China, and that the Tariff Act violation is a *per se* violation of the Lanham Act § 43(a).   York's summary judgment argument is one narrow theory within broad allegations in the Complaint, which states in pertinent part: "Defendants' advertising, sale, offering for sale and/or distribution of caskets using York's distinctive brand names, . . . constitutes false designations of origin and false descriptions or representations of those same goods in violation of 15 U.S.C. § 1125(a)."

Complaint, at 10, ¶ 32.[11]  The Complaint does not explicitly allege that Defendants falsely

designated the *country* of origin, but rather the *company* of origin.

York's request for partial summary judgment on its Lanham Act claim regarding the

false designation of geographic origin relies on two cases, *Bohsei Enterprises Co., U.S.A.*

*v. Porteous Fastener Co.,* 441 F. Supp. 162 (C.D. Cal. 1977), and *Alto Products Corp. v.*

*Ratek Industries Ltd.,*  No. 95 Civ. 3314 (LMM), 1996 WL 497027 (S.D.N.Y. Sept. 3, 1996)

(*Alto II*).  These cases do not aid York in this context.  In *Bohsei,* 441 F. Supp. at 164, the

plaintiff alleged that the defendant imported and then repackaged certain industrial fasteners,

omitting the country of origin on the new containers.  The plaintiff alleged that the defendant

had falsely labeled certain items and omitted any identification of country of origin on

others.  The district court denied a Rule 12(b)(6) motion to dismiss the plaintiff's Lanham

Act "false designation of origin" claim, stating: "The law of false representation must

necessarily include the omission of the material fact of origin that affirmatively says in the

context in which [products] are sold, 'I am a product of the United States.'"  *Id.* at 163–64.

The court determined that it would be "utterly naive" to "hold that omission of such a

---

[11]     As noted above, the claim York actually alleges in its Complaint is that Delta use of York's
distinctive "brand names" (by which York apparently means names of models of caskets) and
photographs of York products in combination constitute the "use . . . of ***false*** designations
of origin."  York here seems simply to track the statutory language and does not expressly
allege that Delta's conduct alternatively violates the Lanham Act because the conduct
constitutes use of "misleading" designations.  If York nevertheless intends to pursue a
"misleading statements" theory, the claim raises a novel question of whether the omission of
any designation of origin is a "misleading representation" under the Lanham Act.  The parties
do not brief the issue and the Court does not reach it at this time; the Court merely assumes
its validity.

material fact is not such a false representation as to affect the competition," and that failure to allow a cause of action under the Lanham Act based on omission of information designating a product's origin would promote active disregard for the provisions of the Tariff Act. *Id.*[12] *Bohsei* thus stands for the proposition that the designation of the country of origin on imported goods is a material fact for Lanham Act "false designation of origin" purposes under § 43(a), and that dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is inappropriate when a plaintiff alleges that the defendant has expressly falsely designated a product's geographic origin or has omitted any indication that a product is imported rather than domestically made. The court did not address likelihood of confusion or what else must be shown for the plaintiff to prevail on such a claim.

---

[12]     The court's comments should be read in context:

> Concern over the materiality of such an omission particularly in the context of imported goods was expressed by Congress when it enacted 19 U.S.C. § 1304 requiring imported articles to be "marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser . . . the country of origin of the article." To hold that omission of such a material fact is not such a false representation as to affect the competition of the sale to the detriment of a seller who complies with the mandate of 19 U.S.C. § 1304 requires an utterly naive view of the realities of the market place. More importantly, it would promote disregard for the provisions of 19 U.S.C. § 1304.

*Id.* at 165.  This ruling was in line with the Ninth Circuit doctrine that likelihood of confusion may be determined by the court as a matter of law under certain circumstances. *See Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1075-76 (9th Cir. 2006); *J.B. Williams Co., Inc. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 190-91 (9th Cir. 1975).

Almost twenty years later, the District Court in the Southern District of New York,

held in *Alto II* that "failure to designate country of origin in violation of the Tariff Act

violates § 43(a) of the Lanham Act as a matter of law."  1996 WL 497027 at *5; *see id*. at

*8.  The *Alto II* court granted summary judgment to the plaintiff on the issue of liability

under § 43(a) of the Lanham Act because there was no dispute that the defendant, a foreign

manufacturer, failed to designate the country of origin in the manner required by the Tariff

Act and had knowledge that the goods would be resold in the United States unmarked.  *Id.*

at *8.[13]  The *Alto II* court based its decision on "the respect which [the Tariff Act] must be

accorded and this Court's prior acknowledgment of the logic supporting *Bohsei*."  *Id.* at *5

(citations omitted). [14]  The New York court then granted the plaintiff's request for injunctive

---

[13]   The Court notes in passing, as did the *Alto II* court, that the United States Supreme Court has stated in regard to whether a foreign manufacturer can be held liable for designating the country of origin that

> liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another.  Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances.  Thus, if a manufacturer or distributor . . . continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit.

*Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853-54 (1982) (other citations omitted). There appears no reason that this rule should not apply to domestic manufacturers or distributors that import foreign-made goods into the United States.

[14]   Two years earlier, the same court held that failure to designate a product as foreign-made *may* state a cause of action under § 43(a) of the Lanham Act.  *Alto Prods. Corp. v. Tri Component Prods. Corp.*, No. 93 CIV 3076 (LMM), 1994 WL 689418, at *3 (S.D.N.Y. Dec. 8, 1994) ("*Alto I*").  The court in *Alto I*, however, did not reach the legal viability of such a claim, since the only question presented was that of subject matter jurisdiction in response to a 12(b)(1) motion to dismiss.

relief under the Lanham Act.  The court there noted that in order to obtain such relief, the plaintiff must demonstrate that the failure to designate country of origin resulted in a likelihood of causing confusion on the part of the buying public.  The court stated that proof of a Tariff Act violation of failing to mark the country of origin on imported goods will establish "a *presumption* among consumers that unmarked goods are made in the United States" (emphasis added) and held that the existence of the Tariff Act violation for failing to properly designate national origin [of the goods] establishes 'a likelihood of deception or confusion on the part of the buying public' as to the national origin of the product."  *Id.* at *8.  To the extent that the *Alto II* ruling supports the theory that failure to mark the country of origin on imported goods in compliance with the Tariff Act is a *per se* violation of § 43(a) of the Lanham Act, the case is not persuasive authority in this District or Circuit and the Court respectfully declines to adopt the New York court's reasoning.  *Alto II*'s conclusion must be read in the context of the Second Circuit's rule that the "likelihood of confusion" element of a Lanham Act claim is a decision for the court as a matter of law.  *See Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584–85 (2d Cir. 1993).[15]  The Fifth Circuit, in contrast, treats the issue of "likely to cause confusion" as a question of fact.  *Soc'y of Fin. Examiners*, 41 F.3d at 225; *Marathon Mfg. Co.*, 767 F.2d at 217.[16]  Moreover, the

---

[15]   The Sixth Circuit similarly treats the issue of likelihood of confusion as a mixed question of fact and law; where the foundational facts are treated as questions of fact, but the ultimate issue of likelihood of confusion is a matter of law.  *See Paddington Corp.*, 996 F.2d at 584–85; *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002).

[16]   The Seventh, Eighth, Tenth and Eleventh Circuits also treat the issue of likelihood to cause
(continued...)

evidentiary record before the court in *Alto II* was undisputed, unlike what is presented here.

The Court now analyzes the available authority in the Fifth Circuit.  Although that court has not specifically addressed the question of whether a violation of the Tariff Act proves a *per se* violation of § 43(a) of the Lanham Act, it has addressed a plaintiff's contention that a putative violation of another regulatory statute does not constitute a *per se* violation of § 43(a).

In *IQ Products Company v. Pennzoil Products Company*, 305 F.3d 368, 375 (5th Cir. 2002), the plaintiff alleged that its competitor violated the Federal Hazardous Substances Act ("FHSA") by not labeling its products as "flammable."  The plaintiff then urged essentially that the FHSA violation was a *per se* violation of the Lanham Act.  *See id.* at 372-73.  In reviewing the FHSA, the Fifth Circuit noted that the Consumer Product Safety Commission ("CPSC") is "responsible for enforcing the FHSA and promulgating, interpreting, and enforcing regulations under the FHSA;" that the CPSC has the authority to determine whether or not to pursue violations of the FHSA; and that "the FHSA does not authorize a private cause of action." *Id.* at 373.  The Fifth Circuit then rejected the plaintiff's theory and stated that "[the plaintiff] essentially seeks to enforce the labeling requirements of the FHSA—an action which the CPSC, the enforcing agency, declined to do.  For these reasons, we conclude that the defendants' failure to label the product in keeping with FHSA

---

[16]      (...continued)
confusion as a question of fact.  *See Gateway, Inc. v. Companion Prods., Inc.*, 384 F.3d 503, 509 (8th Cir. 2004); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000); *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); *Coherent, Inc. v. Coherent Tech., Inc.*, 935 F.2d 1122, 1125 (10th Cir. 1991).

regulations, even if true, does not constitute a false or misleading statement that is actionable under the Lanham Act."[17]  *Id.* at 374.  The Fifth Circuit thus expressed its refusal to interfere with or predict factual determinations by administrative agencies charged with the duty of interpreting and enforcing technical laws.  It also emphasized that the Court should not allow a party  under the guise of a Lanham Act claim to create a private right of action where none exists under the regulatory or statutory scheme.  York's argument that an alleged Tariff Act violation is a *per se* violation of the Lanham Act runs afoul of the Fifth Circuit's analysis, and is rejected.

Bolstering this conclusion is the fact that Plaintiff's theory that a violation of the Tariff Act is a violation of the Lanham Act has never been endorsed by the administrative agency with expertise in tariff regulation.  At most, the United States International Trade Commission[18] has held that evidence of improper designation of origin may be relevant to a Lanham Act "false designation of origin" claim, not that there was a violation of the Tariff Act or that such a violation would resolve the Lanham Act claim.  *See In re Certain Caulking*

---

[17]    The district court below had previously held that it was impermissible to "circumvent the FHSA by converting the Lanham Act into a vehicle to enforce the FHSA, which bars private actions, and to usurp the regulatory function of the CPSC here."  *IQ Prods. Co.*, 305 F.3d at 373 (internal quotations omitted).

[18]    The International Trade Commission, as organized by 19 U.S.C. § 1330 *et seq*, "is an independent, quasijudicial Federal agency with broad investigative responsibilities on matters of trade" that, among other duties, "adjudicates cases involving alleged infringement by imports of intellectual property rights."  *See* About Us, U. S. International Trade Commission, *available at* http://www.usitc.gov/ext_relations/about_itc/index.htm.

*Guns*, 223 U.S.P.Q. (BNA) 388, 406 (Int'l Trade Comm'n 1984); *In re Certain Surveying Devices*, 208 U.S.P.Q. (BNA) 36, 47–48 (Int'l Trade Comm'n 1980).

The Court therefore concludes that York's Lanham Act theory that a Tariff Act violation constitutes a *per se* violation of § 43(a) is not legally viable.

The Court does not reach the evidentiary question of whether facts suggesting a violation of the Tariff Act's marking requirements are relevant to any element of York's Lanham Act claims and thus are admissible in evidence at trial.[19]  This ruling also addresses only York's theory raised on summary judgment and *not* what appears to be other theories of liability York asserts in its Complaint (unconnected to the Tariff Act) that Delta's "advertising, sale, offering for sale and/or distribution of caskets . . . constitutes false designations of origin or false descriptions or representations" of Delta's goods in violation of 15 U.S.C. § 1125(a).  Complaint, at 10, ¶ 32.  Notably, the Fifth Circuit in *IQ Products* relied heavily on *Mylan Labs. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993), a case in which the plaintiff alleged that the defendants violated the Lanham Act both by improperly claiming that its drugs were FDA-approved, in violation of the Food, Drug, and Cosmetic Act ("FDCA"), and by representing that they were "bioequivalent" to the plaintiff's products. *Id*. at 1137-38.  The Fourth Circuit held in *Mylan Labs* that the plaintiffs could not proceed on their first theory because a violation of the FDCA did not create a cause of action under

---

[19]     Just as the International Trade Commission held that evidence of improper labeling was relevant to a § 43(a) claim, the Court at an appropriate time will entertain argument on whether the parties may argue that there is a clear violation of the Tariff Act and, if so, what evidentiary value any such violation may have at trial.

the Lanham Act.  *Id*. at 1139.  But, because the plaintiffs' "bioequivalency" theory sounded under the Lanham Act itself, without requiring a predicate violation of another statute, the plaintiffs were allowed to proceed on that theory.  *Id*.  Here, York's narrow Tariff Act theory proposed in its summary judgment motion is legally insufficient under Fifth Circuit precedent in that an alleged Tariff Act labeling violation does not establish *per se* a Lanham Act violation or likelihood of confusion.  To the extent York intends to proceed on its broader Lanham Act claim as articulated in the Complaint, that claim may proceed.

## V.    CONCLUSION

York has failed to meet its burden as to summary judgment on either its breach of contract or Lanham Act claims.  Accordingly, it is hereby

**ORDERED** that the Motion for Summary Judgment [Doc. # 88] filed by The York Group, Inc., is **DENIED**.  It is further

**ORDERED** that the Motion for Leave to File a Surreply [Doc. # 96] is **GRANTED**.

**SIGNED** at Houston, Texas, this **13th** day of **October, 2006**.

Nancy F. Atlas
United States District Judge